## Freeman *vs.* Swett.

The plaintiff had entrusted a note to the defendant to collect, taking his receipt promising to collect or to return it. The defendant, without authority, entrusted it to another for the same purpose, taking a similar receipt, by whom the note was lost. After demand, the plaintiff brought trover for the note, and the question being upon the ratification by the plaintiff of the defendant's acts, it was proved; that when the plaintiff was first informed of the circumstances by the defendant and the person who lost the note, they offered to furnish him with their depositions proving the loss, so as to enable him to look to the maker of the note; to which he replied, that "*he calculated to take further advice,*" and *refused to accept the proposition.* It also appeared that the plaintiff carried the last mentioned receipt to an attorney, and after asking advice, left the receipt with him; which receipt the *defendant* afterward demanded of the attorney claiming it *as his own,* and alleging that he had only *lent* it to the plaintiff to enable him to obtain advice. *Held,* that a verdict in favor of the defendant, could not be said to be found *entirely without evidence.*

Trover for a note of hand signed by one *Charles S. Page,* and payable to the plaintiff, for $33,35, dated *Nov.* 11, 1826.

The plaintiff gave in evidence a receipt of the following tenor: "Received of *Randall Freeman* a note of $33,35 to collect or to be returned against *Charles S. Page,* of *Campobello.* The above note given *Nov.* 14, 1826. *Nathaniel Swett.*

*Nov.* 13, 1828."

The plaintiff then proved by the deposition of *Ebenezer Emerson,* that he, (the deponent,) by the request of the plaintiff, carried the above receipt to the defendant and demanded the note or the money for it; and that the defendant told him he had carried it in his pocket, and worn it out, and lost it.

*John Page* testified, that *Charles S. Page* commenced trading in *Frankfort,* 18*th May,* 1829, and was then, and for some time afterward, in possession of property and in good credit. It appeared also that the defendant resided at *St. Stephens,* in *New Brunswick,* 35 miles from *Campobello,* and was a cabinet maker.

The defendant proved by the deposition of *John Austin,* that in 1829, he, the defendant, gave said note to the deponent to carry with him to *Hallowell,* to collect, having understood that said Page was somewhere in that vicinity, and took a receipt promising to collect or return it to him — that said *Austin* made

inquiry for said *Page* at *Hallowell* and *Augusta,* but could hear nothing of him — and that on his return he lost his pocket book, containing the note in question, in the vicinity of *Machias.* That in the summer of 1829, the plaintiff was at *St. Stephens,* where the defendant informed him that he had made inquiry at *Eastport* and *Campobello* for *Page,* and was informed that he had absconded — that the deponent informed him of the circumstances of his taking the note and of its loss — that he thought, he and *Swett* the defendant, could place him on as good ground as he would be if he had the note — and *Swett, Freeman,* and the witness went to consult *A. G. Chandler, Esq.* who advised *Freeman* to have deponent and *Swett* make oath before a Public Notary as to the loss of the note, which they offered to do. But the plaintiff said he calculated to have further advice, and *refused to accept the proposition.*

*George Downes, Esq.* testified that *Freeman* came to his office in the summer of 1829, and brought the receipt that *Austin* had given *Swett,* for advice; and left the receipt with him — and that in *February,* 1833, the defendant applied to him for the receipt, saying that it was his, and that he had let *Freeman* take it to obtain advice — and the witness gave said receipt to the defendant, taking indemnity against the plaintiff's claim upon him for the same.

Upon this evidence the counsel for the defendant contended, that *Swett* had no right to let the note go out of his hands to *Austin* for the purpose mentioned, that it was a conversion of the note, and that the defendant was liable in trover for such conversion.

*Ruggles Justice,* in the Court below, where the cause was tried, instructed the jury, that if they were satisfied from the evidence adduced, that the plaintiff when informed of what the defendant had done with the note, did not disapprove, but assented to, and approved of his, the defendant's doings in sending the note by *Austin,* he thereby ratified his doings in that particular, and that the plaintiff had no right afterwards to complain of the delivery of the note to *Austin* as a conversion for which trover would lie. And the jury found a verdict for the defendant.

To this instruction the counsel for the plaintiff excepted.

*Fairfield* and *J. Granger*, for the plaintiff,

Contended that the act of the defendant was unauthorised and amounted to a conversion — that there was no evidence in the case showing or tending to show a ratification by the plaintiff — and that consequently the instructions to the jury were erroneous.

The authority of the defendant is to be found in his receipt. The terms are express. He is to *collect the note or return it.* The trust is a *personal* one and could not be delegated to another. By letting the note go out of his hands without receiving the amount due on it, a loss has ensued, and he must bear it. The case is a plain one. The defendant was the plaintiff's agent for a special purpose, to wit, to collect a note which the plaintiff placed in his possession. He admits he has not collected it — and the proof is, that he refuses to redeliver it to the owner.

Whether the note was valuable or otherwise — whether it could ever have been, or can now be collected of the maker, or not, are questions that cannot be raised here. The *amount* of loss is a question for the jury.

In support of this reasoning, they cited *Paley on Agency*, 4, 148, 149; *Banorgee* v. *Hovey*, 5 *Mass.* 37; *Catlin* v. *Bell*, 4 *Camp.* 184; *Durell* v. *Mosher*, 8 *Johns.* 381; *La Place* v. *Aupoix*, 1 *Johns. Cas.* 406; 2 *Kent's Com.* 495.

There is no evidence in the case tending to show a ratification of this unauthorised act of the defendant. When the circumstances were first communicated to the plaintiff, the communication was accompanied by an offer of evidence which would enable the plaintiff still to look to the maker of the note, and by the acceptance of which he probably might have been considered as indirectly sanctioning the act of the defendant; but the proof is, that "he *refused to accept the proposition.*"

The acceptance of *Austin's* receipt is no evidence of ratification. The same evidence which proves this fact, proves also that the purpose and design of the plaintiff in taking it, was merely to procure advice upon the subject, and not for the purpose of availing himself of any claim he might have under it upon *Austin.* This testimony comes from the defendant himself. And that the plaintiff did not ratify the defendant's act, and agree to pursue his

remedy on *Austin's* receipt, is most abundantly confirmed by the act of the defendant in afterward applying to *Mr. Downes*, the depositary of *Austin's* receipt, *claiming it as his own,* and alleging that he had merely *lent it to Freeman* to enable him to take advice upon the subject.

If then there was no evidence showing a ratification by the plaintiff, it would seem that the instructions to the jury were erroneous. It is true they are expressed in general terms and in the abstract are unquestionably sound. But though the opinion of the Judge be expressed in general terms it must be understood " as having reference to the particular facts on which it is founded." So say this court in *Howes & al.* v. *Shed,* 3 *Greenl.* 202. But the facts in this case all go to show a refusal on the part of the plaintiff to ratify the act of the defendant. There is no evidence even tending to show the contrary. The instructions therefore, are complained of because they *authorised the jury to believe,* that, of which there was *no evidence.*

*A. G. Chandler,* for the defendant.

The only question in this case is, whether the plaintiff ratified the acts of the defendant in regard to the note in question. This is purely a question of *fact,* and has been settled by the jury in favor of the defendant. And he insisted that there was sufficient evidence to justify the jury in thus finding. The parties were seen together, and it is known they had conversations about the note. The plaintiff had *Austin's* receipt and left it with an attorney. Under all the circumstances it is believed the jury might well infer an assent on the part of the plaintiff.

WESTON J. delivered the opinion of the Court.

The law laid down by the Judge at the trial is unexceptionable. If the plaintiff ratified and adopted the act of the defendant, he had nothing afterwards to complain of. But it is said the evidence does not warrant the facts assumed, by way of hypothesis. It may not; and perhaps would rather have justified and required a different result. But the facts are not submitted in this mode to our revision. If, however, there was no pretence or color for the view of them suggested by the Judge, and sustained by the jury, the instruction, although correct in the abstract, might be

objectionable, as tending to defeat the justice of the case. The plaintiff did not complain of the defendant for having omitted any thing in his power to fulfil the trust confided to him; nor does it appear that he acted otherwise than fairly and honestly. The plaintiff was apprized of what had been done. He expressed no dissent, except that he could not accede to the proposition of *Mr. Chandler*, without further advice. It appears that he was in possession of *Austin's* receipt to the defendant, and that he left it with an attorney. The ratification of a principal may often be implied from his silence, or from his acts. We cannot say there was no evidence to this effect; and it is not our province to determine its weight or preponderance.

*Exceptions overruled.*